Bobby McELVAIN, Appellant,

v.

Neil HITE and Susie Hite, Appellees.

No. 82A04–0307–CV–365.

Court of Appeals of Indiana.

Dec. 29, 2003.

B. Michael Macer, Lockyear & Kornblum, Evansville, IN, Attorney for Appellant.

---

## OPINION

BAILEY, Judge.

### Case Summary

Bobby McElvain ("Father") appeals the trial court's order granting Neil Hite's ("Stepfather") petitions for adoption ("Petitions") under Indiana Code Section 31–19–9–8. We reverse.

### Issue

Father raises three issues, one of which we find dispositive: whether the trial court erred in determining that Father's consent was not required to approve Stepfather's Petitions.

### Facts and Procedural History

Father and Susie Hite ("Mother") divorced in 1998, and are the parents of a nine-year-old daughter, K.M., and a seven-year-old son, C.M. (collectively, "the Children"). Mother married Stepfather in 2001, and the Children have been living with Mother and Stepfather since that time. On August 21, 2002, Stepfather filed petitions to adopt the Children and terminate the parental rights of Father.

On March 14, 2003, the trial court conducted a hearing on the Petitions. Mother testified that prior to filing the Petitions, Father had last seen the Children in January of 2002. Father testified that his attempts to maintain contact with the Children have been frustrated by Mother's efforts to prevent visitation, although the trial court previously found Mother was not in contempt. Nevertheless, Father stated that the Children stayed overnight "within a month of" August 2001, after Father's and Mother's third child had died. Hearing Tr. 25. Father also went to see K.M. at her school when K.M. fell and required stitches. Finally, Father stated that he saw the Children several times when a mutual friend was watching the Children.

Mother also stated that prior to August 21, 2002, Father had failed to pay child support that year. While Father admitted to failing to pay support in 2002, he stated that his failure to pay support was due to his unemployment. Prior to being laid off, Father stated that he had maintained support payments, and after August of 2002, he had resumed paying support after taking part-time employment at a liquor store. The trial court, in a prior order, found that Father was not in contempt for failing to maintain support, although it did calculate an arrearage due.

Following the hearing, the trial court granted Stepfather's Petitions, stating, "I think it is a case of too little too late and that this got Mr. McElvain['s] attention at the point [in] time when step-dad filed a petition for adoption so I am going to show that his consent is not necessary at this time for this adoption and make that finding." Tr. 37. Father filed a motion to correct error, which the trial court denied on June 26, 2003. This appeal ensued.

### Discussion and Decision

#### A.  Standard of Review

When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence

leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of Subzda*, 562 N.E.2d 745, 747 (Ind.Ct.App.1990). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Matter of Adoption of Marcum*, 436 N.E.2d 102, 103 (Ind.Ct.App. 1982). We note that a petitioner for adoption without parental consent bears the burden of proving the statutory criteria for dispensing with such consent in Indiana Code Section 31–19–9–8(a)(2) by clear, cogent, and indubitable evidence. *In re Adoption of Augustyniak*, 505 N.E.2d 868, 870 (Ind.Ct.App.1987). If the evidence most favorable to the judgment clearly, cogently, and indubitably establishes one of the criteria for granting adoption without parental consent and, thereby, for the termination of parental rights without consent, we will affirm the judgment. *In re Adoption of Childers*, 441 N.E.2d 976, 978 (Ind.Ct.App.1982). Finally, the decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

■ However, when an appellee fails to submit a brief, our standard of review is relaxed because we will not assume the responsibility of developing arguments for the appellee. *In re Paternity of B.D.D.*, 779 N.E.2d 9, 13 (Ind.Ct.App.2002). We do not apply the typical standard of review. *Id.* Instead, we review the trial court's decision for "prima facie error." *Id.* Prima facie, in this context, means at first glance or on the face of it. *Id.* Consequently, we review for prima facie error the trial court's determination that consent was not required.

*B. Analysis*

Under Indiana Code Section 31–19–9–8(a)(2), consent to adoption is not required from a parent of a child in the custody of another person if for a period of at least one year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Further, Indiana Code Section 31–19–9–8(b) provides that "[i]f a parent has made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent."

■ Father contends that the evidence is insufficient to prove that he failed to communicate significantly with Children during the one-year period prior to the filing of the Petitions. The evidence presented at the March 14, 2003 hearing showed that, without Mother's knowledge, Father visited the Children while they were staying with a mutual friend. The evidence also showed that Father had overnight visitation with the Children after Mother's and Father's son died in August of 2001, and visited K.M. at school after she had injured herself, requiring stitches. Further, Mother testified that Father visited Children in January of 2002, seven months prior to the filing of the Petitions. Because this record does not give rise to an inference that these visits were insignificant or merely token efforts, we hold that the trial court erred by concluding that Father's consent to the adoption was not required under Indiana Code Section 31–19–9–8(a)(2)(A).

■ Father likewise argues that the evidence was insufficient to prove Father failed to provide support to the Children.

While the evidence shows that Father did fail to maintain his support obligations in 2001 and 2002, Father explained that his failure was due to the expiration of unemployment benefits.[1] After losing his benefits, Father was unable to pay support and had to move in with family members.

We have stated that Indiana Code Section 31–19–9–8(a)(2)(B) "clearly requires the petitioner to demonstrate that the natural parent had the ability to provide for the support of the child and did not do so. Where this is not shown the evidence must be deemed insufficient to sustain the granting of the petition." *In re Adoption of D.H. III*, 439 N.E.2d 1376, 1377 (Ind.Ct.App.1982). Further, the ability to pay must be shown by clear and cogent evidence. *Id.* at 1378.

Here, there was no evidence that Father was able to pay support after he lost his unemployment benefits. *See Irvin v. Hood*, 712 N.E.2d 1012, 1014 (Ind.Ct.App. 1999) (evidence that Father was financially able to travel abroad for two months to play rugby showed he was financially able to support child). Instead, the evidence showed that once Father secured part-time employment at a liquor store, he had support payments withheld from his salary. Finally, the trial court determined in its November 1, 2002 Order that Father was not in contempt for failing to maintain support when it determined the arrearage Father owed. Based upon this record, we conclude that the trial court erred in finding that Father was able to maintain support payments.

Accordingly, we reverse the trial court's order granting Stepfather's Petitions.[2]

Reversed.

RILEY, J., and DARDEN, J., concur.

---

1. Father testified that he was unable to make support payments, which he believed was in the "beginning of '91 to '92," because he was laid off due to K–Mart's bankruptcy filing. Tr. 19, 28. K–Mart actually filed for bankruptcy on January 22, 2002. CNN/Money, *Struggling discount retailer ends speculation, files for bankruptcy protection*, (December 2, 2002), available at http://money.cnn.com/2002/01/22/companies/kmart/. We presume that Father was mistaken about the dates, as support payments could not have been required before the Children were born.

2. Because we find that the statutory elements under Indiana Code Section 31–19–9–8 were not met, we do not reach the issue of whether the adoption is in the Children's best interests. Indeed, the denial of the Petitions may "present a hardship by way of emotional disturbance," *Matter of Adoption of Thomas*, 431 N.E.2d 506, 513 (Ind.Ct.App.1982), whether on the children or the parents, as Mother's testimony indicates that Mother and Father have been unable to settle their differences even five years after their divorce.

Q: Obviously you two can't work together, is that correct?
A: No we cannot.
Q: So it [(visitation)] has to be done through the attorneys, is that correct?
A: Yes.

Hearing Tr. 12. Further, Mother indicated concerns that K.M. would "run away from the house" if she were forced to visit Father. Hearing Tr. 10. We direct the parties to Indiana's Parenting Time Guidelines Section I.E., which places the responsibility on the parents "to ensure the child complies with the scheduled parenting time. In no event shall a child be allowed to make the decision on whether scheduled parenting takes place." IND. PARENTING TIME GUIDELINES § I.E.3. Moreover, in situations where the parties have been unable to settle their differences, the Guidelines require that every effort be made, including mediation, prior to seeking court action. *Id.* at § I.E.1, 2. Rather than continuing to seek contempt orders against one another, we strongly urge the parents and their

attorneys to consider whether their differ-ences may be resolved through mediation.