**In re the ADOPTION OF N.W.**

**M.W., Appellant–Respondent,**

v.

**A.W., Appellee–Petitioner.**

**No. 71A04–1002–AD–127.**

Court of Appeals of Indiana.

Sept. 16, 2010.

---

Craig V. Braje, Elizabeth A. Flynn, Braje, Nelson & Janes, LLP, Michigan City, IN, Attorneys for Appellant.

Mark F. James, Anderson, Agostino & Keller, P.C., South Bend, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, M.W. (Mother), appeals the trial court's grant of adoption of the minor child, N.W., by A.W. (Stepmother).

We reverse.

### ISSUE

Mother raises two issues on appeal, which we consolidate and restate as: Whether the trial court erred in concluding that Mother's consent to the adoption of her minor child by Stepmother was not required.

### FACTS AND PROCEDURAL HISTORY

N.W. was born in Japan on December 1, 2001, to Mother and R.W. (Father). N.W. resided with both parents until their separation in August of 2005. Mother and Father divorced in June 2006. As part of the settlement agreement in the divorce proceedings, the parties agreed to joint legal custody with Father having physical custody. The agreement further stipulated that "until the minor child becomes emancipated or until further order of the [c]ourt, [Mother], at this time, will not be obligated to pay support due to her economic condition." (Transcript p. 32). Following the divorce, N.W. resided with Father and his parents in LaPorte, Indiana. From August 2005 through June 2007, Mother visited with N.W. every weekend.

Approximately one year after the divorce, in June of 2007, Father moved into his own residence in Mishawaka, Indiana. Thereafter, due to a change in Mother's employment situation, Mother requested a modification of her parenting time and visited N.W. every other weekend. She visited with N.W. alternating weekends until March of 2009.

In August of 2008, Father met Stepmother and they started living together three weeks later. Stepmother has three children of which her former husband has physical custody. In January of 2009, Father and Stepmother married. In March of 2009, visitation ceased between Mother and N.W. Mother testified that visitation halted because Father demanded child support in exchange for visitation. Although Father denied making demands, he did acknowledge that he made a request for child support in March of 2009. As a result of being denied parenting time, Mother filed a contempt action against Father together with a request for modification of custody.[1] Subsequently, in October of 2009, Father filed a request for modifi-

---

1. In her appellate brief, Stepmother claims that the evidence from the divorce court regarding child support is not admissible because the trial court in the instant proceedings never ruled on its admissibility. We disagree. First, when Mother's counsel focused on the negative child support obligation established by the divorce court, the trial court stated, without Stepmother's counsel raising an objection, "[w]ell, it is certainly evidence that can be brought for-ward." (Transcript p. 25). Next, when Stepmother's counsel objected on relevancy grounds to the admission of the trial court's order on child support, dated October 13, 2009, the trial court ruled

> I think, what I'm going to do, [ ], is to allow her to enter it and, perhaps, in the post-trial briefings or whatever, because I will be requesting that you folks submit proposed findings. I will address the legality, the

cation of child support. On October 13, 2009, the trial court entered findings and an order on the parties' filings, ordering a custodial visitation, establishing parenting time in accordance with the Parenting Time Guidelines, and concluding, in pertinent part, that

> 5. [Mother] is employed at a salary of $769.00 gross per week. [Father's] attorney determined his weekly wage to be $1,619.00 based on a gross weekly salary of $985.00 plus one third of his incentives and bonuses. [Father's] overtime incentives and bonuses are substantial in that they are approximately $74,180.00 to date for calendar year 2009. His total year to date gross wages are $112,000.00. It appears that the incentive, bonuses, and overtime are rather consistent. In calendar year 2008, he received a gross income of $80,000.00. In light of the economic downturn for the year 2009, and the [Father's] substantial incentive and overtime income, the [c]ourt will include all of his gross wages and determine that his gross weekly income is $2,887.00. After giving [Mother] a parenting credit of 98 overnights, [Mother's] support obligation would be a negative $2.00 per week. Accordingly, no support order will be entered at this time.

(Appellant's App. p. 108).

On June 8, 2009, while the requests for custody modification and child support were filed by Mother and Father, Stepmother filed a petition for adoption of N.W. On June 29, 2009, Mother filed her objection to the petition for adoption and on July 14, 2009, she filed a motion to dismiss the adoption proceedings. On December 23, 2009, the trial court granted Stepmother's petition for adoption and, in turn, denied Mother's petition for dismissal, finding that Mother's consent to the adoption was not required because she failed to support N.W. On January 20, 2010, Mother filed a motion to correct error/motion for relief from judgment, which was consequently denied by the trial court on February 19, 2010.

Mother now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ Mother contends that the trial court erred in granting Stepmother's petition for adoption when it determined that Mother knowingly failed to provide for the care and support of N.W. pursuant to Indiana Code section 31–19–9–8(a).

■ When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion, and the trial court reached the opposite conclusion. *In Re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind.Ct.App.2004). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial

legal issue as to whether or not that's admissible in this case or not. If it is it stays in and if it isn't it goes out. All right.

\* \* \*

All right. And the [c]ourt will admit Exhibit A subject to, assuming, if counsel wishes to submit any legal authority on that as part of the post-trial pleadings subject to being thrown out depending on what the [c]ourt finds. You may proceed.

(Tr. pp. 37–38). In its order in this case, the trial court did not revoke the admissibility of the exhibit.

Additionally, Stepmother now argues that the evidence is inadmissible pursuant to Ind. Rule of Evidence 407, remedial measures. However, a party may not argue one ground for objection to evidence at trial and then raise new grounds on appeal. *Hightower v. State*, 866 N.E.2d 356, 365 (Ind.Ct.App.2007). Therefore, we find Stepmother's argument waived for appellate review.

court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id.* The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

■ The most protected status in any adoption proceeding is that of the natural parent. *Stout v. Tippecanoe Co. Dept. of Public Welfare,* 182 Ind.App. 404, 395 N.E.2d 444, 449 (1979). Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the statute to preserve that relationship. *Id.* However, even the status of natural parent, though a material consideration, is not one which will void all others, and under carefully enumerated circumstances, the statute allows the trial court to dispense with parental consent and allow adoption of the child.

Indiana Code section 31–19–11–1 provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the trial court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given." According to Indiana Code section 31–19–9–8(a):

Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:

\* \* \*

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

\* \* \*

(B) knowingly fails to provide for the care and support of the child when

able to do so as required by law or judicial decree.

\* \* \*

(11) A parent if:

(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Thus, Stepmother was required to prove by clear and convincing evidence that Mother's consent was not required. *See In Re Adoption of T.W.,* 859 N.E.2d 1215, 1217 (Ind.Ct.App.2006).

To carry her burden, Stepmother presented evidence indicating that despite receiving a regular income since 2006, Mother failed to pay any child support to father for N.W.'s care. Specifically, Stepmother elicited testimony reflecting that Mother had an income of approximately $24,000.00 in 2006 and approximately $30,000.00 in 2007 through 2009. Stepmother now argues that because Mother had an income and knowingly failed to provide for her minor child's care, her consent to the adoption is no longer required.

■ We disagree. The mere showing that Mother had a regular income, standing alone, is not sufficient to indicate Mother's *ability* to provide support, "nor can such an inference reasonably be drawn from this evidence." *See In Re Adoption of Augustyniak,* 505 N.E.2d 868, 873 (Ind.Ct.App.1987), *opinion on reh'g,* 508 N.E.2d 1307, 1309 (Ind.Ct.App.1987), *trans. denied* (Proof of employment and income are necessary components in determining the ability to provide support, but they are not the only components); *Matter of Adoption of D.H. III,* 439 N.E.2d 1376, 1378 (Ind.Ct.App.1982). As such, Stepmother failed to

carry her burden that Mother was able to provide for N.W. but refused to do so.

Regardless, here, the totality of the evidence establishes the opposite, *i.e.*, that Mother provided for N.W. to the best of her ability. At the time of the divorce decree, both parties agreed that due to Mother's economic situation no child support payments were required. Thereafter, when Mother was denied visitation in March of 2009, Mother filed a contempt citation against Father in the original divorce proceedings for not allowing parenting time as well as a request for modification of custody. Father responded by filing a modification of child support. On October 13, 2009, the trial court entered findings and an order on the parties' filings, ordering a custodial visitation, establishing parenting time in accordance with the Parenting Time Guidelines, and concluding, that Mother has a "negative child support obligation." (Appellant's App. p. 108). As such, no judicial decree was ever entered mandating Mother to pay child support for N.W.

 Nevertheless, even though Mother is not subject to a judicial decree, we recognize that Indiana law imposes a duty upon a parent to support her children. *Irvin v. Hood,* 712 N.E.2d 1012, 1015 (Ind. Ct.App.1999). This duty exists apart from any court order or statute. *Id.*; see also *In Re Adoption of M.A.S.,* 815 N.E.2d 216, 220 (Ind.Ct.App.2004). Consequently, even though no court order to pay child support may exist, Mother still had a duty to support N.W. However, because the trial court already determined that Mother's child support is negative, this 'duty of support' might be defined in nonmonetary terms. In this light, Mother testified that when she exercised her parenting time, she provided N.W. with housing, clothing, food, and other necessities. She took her daughter to different places, including movies and the zoo, and gave her gifts during holidays. While Mother might not have been able to monetarily provide N.W. with much, the child was not neglected nor are there any allegations pointing to neglect.

Based on the evidence before us, we conclude that Stepmother, as the party seeking to sever the Mother-daughter relationship, failed to prove by clear and convincing evidence that Mother's consent was not required. Although Mother was not required to pay child support pursuant to a judicial order, she remained under a common law duty to provide support to N.W. when able to do so. *See* I.C. § 31–19–9–8(a). We find that Mother provided to the best of her ability: while creating a nurturing environment during parenting time, Mother supplied N.W. with all the necessities of housing, food, and even mother-daughter outings and gifts.

 Even assuming *arguendo* that Mother failed to provide support when she was able to do so and her consent would thus not be required for the adoption, we would still reverse the trial court's grant of Stepmother's petition to adopt because the adoption is not in N.W.'s best interest. A petition for adoption is not automatically granted following a showing that a natural parent failed to provide support when able to do so. Once the statutory requirements are met, the court may then look to the arrangement which will be in the best interest of the child. *Matter of Adoption of D.H. III,* 439 N.E.2d 1376, 1377 n. 1 (Ind.Ct.App.1982); *see also* I.C. § 31–19–9–8(a); I.C. § 31–19–11–1.

 The purpose of Indiana's adoption statutes is to protect and promote the welfare of children by providing them with stable family units. *In Re Adoption of D.C.,* 928 N.E.2d 602, 607 (Ind.Ct.App. 2010). On occasion we have observed that

the relationship between parent and child is a bundle of human rights of such fundamental importance that adoption statutes, being in derogation of the common law, should be strictly construed in favor of a worthy parent and the preservation of such relationship. *In Re Adoption of K.S.P.*, 804 N.E.2d 1253, 1258 (Ind.Ct.App. 2004). However, in evaluating the parent-child relationship, the best interest of the child is paramount and our main concern should lie with the effect of the adoption on the reality of the minor child's life. *Id.*

The evidence before us indicates that N.W. resided with both parents during the first four years of her life. Thereafter, during her parents' separation and subsequent divorce, Mother visited with N.W. every weekend from August 2005 through June 2007. Due to changing circumstances in Mother's employment situation in June of 2007, parenting time was changed to every other weekend. Father remarried in January 2009. In March of 2009, Father requested from Mother child support and halted visitation between Mother and N.W. Consequently, Mother filed a contempt proceeding against Father.

It is clear that Mother wants to remain a loving presence in N.W.'s life. Not only is Mother intent on retaining her parental rights and obligations, but N.W. herself signals that she wants Mother in her life. The record includes notes from N.W. to her Mother, stating among others, "I Love you" and "Dear mommy, I have missed you a lot, Love [N.W.]." (Respondent's Exh. C).

On the other hand, Stepmother does not claim or allege that Mother is "unworthy" or neglects her child. Rather, in support of her argument that the adoption is in N.W.'s best interest, Stepmother points to herself and states that "she is heavily involved in the child's life." While we applaud her involvement in N.W.'s life, our overriding concern remains with the child and whether the relationship with her natural parent should be severed. Under the circumstances before us, there is not a single shred of evidence indicating that this adoption could even remotely be considered to be in N.W.'s best interest. We reverse the trial court.

## CONCLUSION

Based on the foregoing, we conclude the trial court erred when it granted Stepmother's petition to adopt the minor child.

Reversed.

KIRSCH, J., and BAILEY, J., concur.

