**In the Matter of the ADOPTION OF M.B.**

**Je.B., Appellant–Petitioner,**

v.

**Ja.B., Appellee–Respondent.**

**No. 39A01–1007–AD–366.**

Court of Appeals of Indiana.

Feb. 24, 2011.

R. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Darrell M. Auxier, Jenner, Auxier & Pattison, LLP, Madison, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Je.B. ("Stepfather") appeals the trial court's order dismissing his petition to adopt M.B. ("the child") without the consent of her natural father, Ja.B. ("Father"). We consider a single issue on review, namely, whether the trial court erred when it denied and dismissed Stepfather's petition.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 22, 2007, K.B. ("Mother") gave birth to the child. Father was present at the birth and, the following day, executed a paternity affidavit. Mother was eighteen years old, and Mother and Father were engaged at the time. Following the birth, Mother and the child resided with Mother's parents. Father did not contribute to the cost of Mother's pregnancy or the child's birth.

Mother and Father's engagement ended approximately two months after the child was born. After six weeks of maternity leave, Mother returned to her job waitressing at Cliffy Inn, where Father worked as a cook. Mother worked the morning shift and Father worked an evening shift. To avoid the cost of daycare, Mother left the child with Father at his apartment while Mother was working. Father has not had a driver's license since before the child's birth, nor does he have a high school education.

In August or September 2007, Mother unilaterally decided to take the child to daycare instead of leaving her with Father. Following the change in childcare arrangements, Mother allowed Father to see the child one day per week. Father also had the child for one overnight visitation, at Christmas in 2008. Meanwhile, in October 2007, Mother began dating Stepfather. Mother and Stepfather married in August 2008.

Since the child's birth, Father has been employed intermittently. He worked as a cook at Cliffy Inn until October 2007, when his employment was terminated. He drew unemployment benefits for three or four months before relocating to live with friends in Carrollton, Kentucky, so that he could take a job with a subcontractor at North American Stainless ("NAS"). While at NAS, Father asked Mother for the child's Social Security number so that he could arrange to pay child support. Mother refused Father's offer. Shortly thereafter, Father left NAS to move closer to his family. He then worked as a self-employed construction worker, but work was not always available. In 2008, Father was also briefly employed as a weekend cook at the Red Pepper Restaurant for minimum wage and at Jendy's Pizzeria. He left both jobs due to the limited hours and low wage.[1]

Father exercised parenting time one work day per week until July 2, 2009, missing a few visitations. On that date, Mother and Father argued about the time Father was supposed to return the child to Mother. After that argument, Mother refused Father's requests to see the child. On September 2, 2009, Father filed a petition to establish paternity.[2] And on October 15, Stepfather filed his petition for adoption ("Petition") and motion to proceed with adoption without consent of biological father pursuant to Indiana Code Section 31–19–9–8.[3]

The trial court held a hearing on Stepfather's Petition on May 18 and July 1, 2010.

At the close of evidence, the court took the matter under advisement. And on July 6, the court entered an order denying and dismissing Stepfather's Petition ("Order"). The Order provides, in relevant part:

> After the child was born, [Mother] returned to her parents' home and was soon back working as a waitress. She worked in the morning and [Father] worked the evening shift. She would drop [the child] off at [Father's] apartment and he would have parenting time and the parties could thus avoid the expense of day care. This arrangement lasted until late August or early September of 2007 when [Mother] decided to arrange for day care without [Father's] help. [Father's] parenting time then became limited, at [Mother's] choice, to parenting time of one day a week. This arrangement lasted from September 2007 until July 2, 2009. [Father] has only had overnight parenting time once, that being at Christmas of 2008. [Mother] had allowed these one[-]day a week visits only because [Father] wanted them.

> \* \* \*

> On the issue of whether [Father] provided financial support, the evidence is that he provided no support. He did, however, provide substantial parenting time that avoided the need for day care during much of the first five months of [the child's] life and he was rebuffed whenever he mentioned his willingness to provide such support thereafter. [Mother], rather than insist on support,

---

1. In 2010, Father also worked at Wal–Mart for one month, and he was employed at D–2 Industrial as a painter at the time of the May 2010 hearing. However, we focus our review on Father's work history in the year preceding Stepfather's filing of the petition to adopt the child. *See* Ind.Code § 31–19–9–8(a)(2)(B).

2. The parties have not included a copy of the petition to establish paternity in the record on appeal.

3. There is no indication in the record to show the status of the paternity action or whether the paternity case was consolidated with Stepfather's Petition.

told [Father] they didn't need his money. There never has been a Court order for support in place.

During much of this time [Father] was either out of work or working for minimum or low wage. He lost his job at Cliffy Inn in September [2007] over a disagreement about whether he was allowed to take a day off. This was followed by intermittent employment at a low wage except for one short period when he had secured a job that required him to work varying shifts that had him living out of town and which interfered with what parenting time he was able to obtain from [Mother].

[Father] was regularly exercising parenting time at his request for over two years and three months from [the child's] birth to two months prior to his filing a paternity action to have a judicial determination of parenting time and support. During this same time offers of support by him were either rebuffed, or [Father's] financial ability to provide support was not evident. Upon being refused parenting time [Father] saved money to hire an attorney and filed a paternity action to establish both support and parenting time.

Under these circumstances the Court finds that [Stepfather] has not met his burden of proving by clear, cogent and indubitable evidence that he may proceed with the adoption without the consent of the natural father.

Appellant's App. at 33–35. Stepfather now appeals.

### DISCUSSION AND DECISION

■ Stepfather appeals the trial court's order denying and dismissing his petition to adopt the child without Father's consent, pursuant to Indiana Code Section 31–19–9–8. Our standard of review in adoption cases is well-settled:

When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *Rust v. Lawson,* 714 N.E.2d 769, 771 (Ind.Ct.App.1999), *trans. denied.* We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id.* The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

*M.A.S. v. Murray,* 815 N.E.2d 216, 218–19 (Ind.Ct.App.2004).

Stepfather alleges in the Petition that Father's consent to the adoption is not required pursuant to Indiana Code Section 31–19–9–8. That statute provides, in relevant part:

Consent to adoption, which may be required under [Indiana Code Section 31–19–9–1], is not required from any of the following:

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

\* \* \*

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Ind.Code § 31–19–9–8(a)(2).

Father states that Stepfather had the burden to prove the elements of Section 31–19–9–8(a)(2) by clear, cogent, and indubitable evidence. In support he cites *McElvain v. Hite,* 800 N.E.2d 947 (Ind.Ct. App.2003). Both *M.A.S.* and *McElvain* ultimately rely on *In re Augustyniak,* 505 N.E.2d 868 (Ind.App.1987) as support for the higher "indubitable" burden. *See*

*M.A.S.*, 815 N.E.2d at 219; *McElvain*, 800 N.E.2d at 949. But in *M.A.S.* another panel of this court took the opportunity to examine the applicable standard of review in light of the July 1, 2003, amendment to the relevant statute and pointed out that such an interpretation creates inconsistent burdens across the different statutory bases for adoption. We agree with the reasoning in *M.A.S.*, that, absent statutory authority to the contrary, the burden of proof for an adoption without consent, under any of the subsections in Section 31–19–9–8, is the clear and convincing evidence standard. *See M.A.S.*, 815 N.E.2d at 220.

Stepfather first contends that the trial court "committed clear error in its inclusion of the finding that there has never been a Court order for support." Appellant's Brief at 11. Stepfather states that the trial court "does not explain and no authority has been offered that the Mother having 'rebuffed' Father's offer of support thereby waived the issue of support indefinitely." *Id.* He continues that the " 'rebuffed offer of support' was insufficient to terminate [Father's] duty of support." *Id.* In sum, Stepfather construes the court's finding that there was no support order to mean that Father did not have a duty to provide child support. We cannot agree with Stepfather's construction of the trial court's findings.

The evidence supports the trial court's finding that there was no court order requiring Father to pay child support. But "it is well-settled that parents have a common law duty to support their children." *Boone v. Boone,* 924 N.E.2d 649, 652 (Ind. Ct.App.2010). The lack of a court order on support did not relieve Father of that obligation. In any event, the trial court did not rely solely on the lack of a court order for support as the basis for finding

that Stepfather did not meet his burden to satisfy Section 31–19–9–8(a)(2).

█ Again, the trial court found in part that

On the issue of whether [Father] provided financial support, the evidence is that he provided no support. He did, however, provide substantial parenting time that avoided the need for day care during much of the first five months of [the child's] life and he was rebuffed whenever he mentioned his willingness to provide such support thereafter. [Mother], rather than insist on support, told [Father] that they didn't need his money. There never has been a Court order for support in place.

Appellant's App. at 34. In other words, the trial court considered that Father had lessened Mother's daycare costs by providing childcare one workday per week. A parent's nonmonetary contribution to a child's care may be counted as support. *M.W. v. A.W. (In re N.W.)*, 933 N.E.2d 909, 914 (Ind.Ct.App.2010). Here, the court found that Father's contribution in this fashion constituted support of the child. Stepfather has not shown that the trial court erred in reaching that conclusion.

Stepfather also contends that Father had the ability to provide financial support for the child. In support, he quotes Father's testimony that he was "capable of providing support for [the child.]" Transcript at 154. He argues that Father's periods of unemployment or employment for a low wage were due solely to Father's choice. As a result, Stepfather maintains that the trial court "erred by focusing on [Father's] employment instead of the totality of circumstances." Appellant's Brief at 15. Again, we cannot agree.

On the issue of Father's ability to provide support, the trial court found:

During much of this time [Father] was either out of work or working for minimum or low wage. He lost his job at Cliffy Inn in September [2007] over a disagreement about whether he was allowed to take a day off. This was followed by intermittent employment at a low wage except for one short period when he had secured a job that required him to work varying shifts that had him living out of town and which interfered with what parenting time he was able to obtain from [Mother].

[Father] was regularly exercising parenting time at his request for over two years and three months from [the child's] birth to two months prior to his filing a paternity action to have a judicial determination of his parenting time and support. During this same time offers of support by him were either rebuffed[ ] or [Father]'s financial ability to provide support was not evident. Upon being refused parenting time [Father] saved money to hire an attorney and filed a paternity action to establish both support and parenting time.

Appellant's App. at 35. Stepfather does not challenge the findings that Father was "intermittent[ly] employed at a low wage[.]" *Id.* Instead, he argues that the court should have considered the additional evidence that the nature of Father's employment was of his own choosing and that Father had nevertheless testified that he was capable of providing support for the child. Stepfather's argument is merely a request that we reweigh the evidence, which we cannot do. *See M.A.S.,* 815 N.E.2d at 218. Moreover, as discussed above, the trial court found that Father had provided support within the one-year period preceding the Petition by providing childcare one workday per week. Stepfather's argument on this point must fail.

**Conclusion**

In sum, Stepfather misconstrues the trial court's order to provide that Father had no legal duty to provide support for the child. Indeed, a parent has a common law duty to provide child support even absent a court order. *Boone,* 924 N.E.2d at 652. And such was the case here. In any event, Father provided support by providing childcare during his parenting time one workday per week, thus saving Mother one day's worth of daycare expenses each week. Father cared for the child in that fashion through July 2, 2009, which was within one year preceding the filing of the Petition for Adoption. As a result, Stepfather has not shown that Father failed to provide support within the year that preceded the filing of the Petition, as required by Indiana Code Section 31–19–9–8(a)(2). Therefore, Stepfather has not met his burden of showing that Father's consent is not required for the adoption, and the trial court did not err when it denied and dismissed his petition to adopt the child without Father's consent.

Affirmed.

DARDEN, J., and BAILEY, J., concur.