## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2018, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph A. Sobek
Lennox, Sobek & Buehler, LLC
Warsaw, Indiana

ATTORNEY FOR APPELLEES

Jay A. Rigdon
Rockhill Pinnick LLP
Warsaw, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of J.H., Minor Child,

D.H.,

*Appellant-Respondent,*

v.

K.J. and B.J.,

*Appellees-Petitioners.*

July 31, 2018

Court of Appeals Case No. 18A-AD-454

Appeal from the Kosciusko Circuit Court

The Honorable Michael W. Reed, Judge

Trial Court Cause No. 43C01-1703-AD-10

**Kirsch, Judge.**

[1]     D.H. ("Father") appeals the trial court's Decree of Adoption, which granted the petition to adopt minor child J.H. ("the Child") that was filed by K.J.

("Mother") and B.J. ("Stepfather"). Father raises the following restated issues for our review:

Whether the evidence was sufficient to support the trial court's decision that Father's consent was not required for adoption of the Child; and

Whether counsel for Father provided ineffective assistance.

We affirm.

**Facts and Procedural History**

The Child was born to Mother and Father on January 17, 2008. *Tr.* at 10. Before October 26, 2017, the last time that Father had seen the Child was in 2012 when the Child entered kindergarten. *Id.* at 10, 22. Father arranged to visit the Child once for a playdate in 2012, but did not appear. *Id.* at 10-11. The last time Father spoke to the Child on the phone also was in 2012. *Id.* at 12. Father had numerous options available to him to communicate with the Child, either through electronic communication or written correspondence. *Id.* at 12, 14, 15, 16. Those included Mother's email address, Facebook, Mother and Stepfather's phone numbers, and Mother's physical address. *Pet'r's Ex.* 1. Since 2012, Father has not sent anything in writing to the Child and has not tried to call her on the phone. *Tr.* at 12, 27. He did not reach out to Mother to request that the Child contact him through any sort of electronic media. *Id.* at 12. Mother always kept her physical address available in the child support records of the Clerk's Office. *Pet'r's Ex.* 2.

[7]     Father had been ordered to pay child support in the amount of eighty dollars per week. *Tr.* at 18. The child support records from the Clerk of the Court indicated that after March 15, 2014, a total of $520 was paid on the child support obligation. *Pet'r's Ex.* 5. Father held a job as a security officer with Menards for about three months, being paid approximately ten dollars an hour. *Tr.* at 25, 35. Thereafter, Father claimed to have physical, mental, and emotional disorders that kept him from working. Although Father filed for Supplemental Security Income ("SSI") benefits, he never received such disability benefits, nor did he provide the trial court with records or evidence to support his claims of disability. *Id.* at 22, 25, 26, 35, 36. Mother and Stepfather filed a petition to adopt the Child, contending that Father's consent was not necessary because Father has failed to communicate with the Child and has failed to provide financial support to the Child. Father contested the adoption, and a hearing was held.

[8]     Although Father did not provide any financial support to the Child, he testified at the adoption hearing that he had received, perhaps, hundreds or thousands of dollars in financial support from April 2015, through the date of the hearing, from family and the Warsaw Evangelical Presbyterian Church. *Id.* at 33. He did not provide any of that cash for financial support for the Child. *Id.* at 33-34. The trial court found that Father's consent was not required because Father failed to communicate and to provide financial support to the Child. The trial court stated that the evidence was clear that Father had the ability to

communicate with the Child and failed to do so, and there was a lack of financial support for the Child since 2012. Father now appeals.

## Discussion and Decision

We begin by recognizing that the purpose of our adoption statutes is to protect and promote the welfare of children by providing them with stable family units. *In re Adoption of K.F.*, 935 N.E.2d 282, 289 (Ind. Ct. App. 2010), *trans denied*. The relationship between parent and child is of such fundamental importance that adoption statutes, being in derogation of the common law, are "strictly construed in favor of a worthy parent and the preservation of such relationship." *Id*. In evaluating the parent-child relationship, however, the best interest of the child is paramount, and "our main concern should lie with the effect of the adoption on the reality of the minor child's life." *Id*.

## Consent

Father contends that the trial court erred when it determined that his consent to the adoption was not required. When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion, and the trial judge reached an opposite conclusion. *In re Adoption of H.N.P.G.,* 878 N.E.2d 900, 903 (Ind. Ct. App. 2008), *trans. denied*, *cert. denied*, 129 S. Ct. 619 (2008). We will not reweigh the evidence, but instead, will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id*. It is the appellant's burden

to overcome the presumption that the trial court's decision was correct. *McElvain v. Hite*, 800 N.E.2d 947, 949 (Ind. Ct. App. 2003). Furthermore, we may affirm a trial court order on any basis supported by the record. *Wishard Mem'l Hosp. v. Kerr*, 846 N.E.2d 1083, 1093 (Ind. Ct. App. 2006).

[13] Indiana Code section 31-19-9-1 provides, in pertinent part, that a petition to adopt a child who is less than eighteen years of age may be granted only if written consent to the adoption has been executed. Indiana Code section 31-19-9-8, provides, however, that consent to adoption is not required from a "parent of a child in the custody of another person if for a period of at least one year the parent:

[14] (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

[15] (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree."

[16] Ind. Code § 31-19-9-8(a)(2). "If a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent." Ind. Code § 31-19-9-8(b). The petitioner bears the burden to prove this by clear and convincing evidence. *In re Adoption of M.S.*, 10 N.E.3d 1272, 1279 (Ind. Ct. App. 2014).

[17] Father asserts that the trial court erred by concluding that Mother and Stepfather proved by clear and convincing evidence that Father, for at least one

year, failed without justifiable cause to communicate significantly with the Child when able to do so. *See* Ind. Code § 31-19-9-8(a)(2)(A).

[18] Under Indiana law, the party petitioning to adopt without parental consent under section 8(a)(2)(A) has the burden of proving both a lack of communication for the statutory period and that the ability to communicate during that time period existed. *In re Adoption of C.E.N.*, 847 N.E.2d 267, 271 (Ind. Ct. App. 2006). To preserve the consent requirement for adoption, the level of the parent's communication with the child must be significant and more than "token efforts" on the part of the parent. *Id.* at 272. We have held that the purpose of the provision dispensing with consent if the parent "fail[ed] without justifiable cause to communicate significantly with the child when able to do so" is to encourage non-custodial parents to maintain communication with their children and to discourage them from visiting their children just often enough to thwart the adoptive parents' efforts to provide a settled environment for the children. *Id.* That being said, efforts of a custodian to hamper or thwart communication between parent and child are relevant in determining the parent's ability and opportunity to communicate. *In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006); *Rust v. Lawson*, 714 N.E.2d 769, 772 (Ind. Ct. App. 1999), *trans. denied.*

[19] Indiana Code section 31-19-9-8(a)(2) is written in the disjunctive—consent of the parent is not required where either failure to communicate significantly *or* failure to provide support is established. *In re Adoption of S.W.,* 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). Here, we do not address Father's argument

regarding whether he knowingly failed to provide for the support of the Child when able to do so because we affirm the trial court's judgment based on Father's failure to communicate significantly with the child when able to do so.

[20] Father contends that he had a justifiable reason for his lack of communication with the Child, which was that Mother prevented such communication. Father also contends that he attempted to communicate with the Child multiple times, but did not know where Mother and the Child lived. After review of the record, we disagree. Both Mother and Father testified that Father last saw the Child on the Child's first day of kindergarten in 2012. The Child is now in fourth grade. *Tr.* at 10, 22. Mother stated that there was one occasion when Father was scheduled to have a visit with the Child at the park, and Father did not show up. *Id.* at 10-11. Father never followed up with Mother regarding why he missed the visit. *Id.* at 11. Mother testified that Father had made one request, since 2012, to see the Child, and that was a request that Mother bring the Child to the hospital the day his daughter with his current wife was born. *Id.* at 11-12. Mother did not take the Child to the hospital and could not recall when this happened. *Id.* at 12. Mother testified that she has kept her address current with the Clerk's Office. *Id.* at 14.

[21] Mother testified that Father last spoke to the Child on the telephone in 2012. *Id.* Mother stated that Father has her phone number because it is the same phone number that he used to call to talk to her about his issues prior to August 2013. *Id.* at 15. Stepfather's phone number was also provided to Father via Facebook so that he could communicate with the Child. *Id.* Mother admitted

that Father has called to speak with the Child once or twice since 2012; however, he was unable to speak to the Child because it was a school night and past the Child's bedtime. *Id*. at 19-20. Mother stated that she informed Father that he was welcome to call, but Father would need to do so before the Child's bedtime. *Id*. at 20. Furthermore, Father has not attempted to contact Mother via Facebook since 2012 to communicate with the Child. *Id*. at 12. Father also had Mother's email address and did not attempt to reach Mother and request to communicate with the Child. *Id*. at 16. Therefore, because the evidence showed that Father failed without justifiable cause to communicate significantly with the Child for a period of at least one year, Mother and Stepfather have met their burden of showing that Father's consent was not required for the adoption, and the trial court did not err when it granted the petition for adoption of the Child without Father's consent.

**Ineffective Assistance of Counsel**

Father argues that the trial court erred in declaring that his consent was not required because he received ineffective assistance from his attorney. "Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination." *Baker v. Marion Cnty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004).

Father contends that his trial counsel was ineffective. Father indicated during his testimony that he had been deemed "medically frail" by his insurance company and, he argues, documentation of this could be found in the Title IV-D Office located in the same building as where the adoption hearing was being held. *Tr.* at 34. Father also argues that his counsel was made aware, prior to the contested adoption hearing, that additional documentation was available from Father in reference to the issues that Father testified to regarding his employment as it pertained to the care and support of the Child. Father maintains that this documentation would have made a difference in the contested hearing. However, this documentation was not required because sufficient evidence was presented to support that Father failed to communicate with the Child for at least one year, and that was enough to prove Father's consent was not needed.

Affirmed.

Baker, J., and Bradford, J., concur.