## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 04 2020, 8:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark E. Small
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Adoption of G.B.A., | August 4, 2020 |
| L.C., | Court of Appeals Case No. 20A-AD-744 |
| *Appellant-Respondent,* | Appeal from the Greene Circuit Court |
| v. | The Honorable Erik C. Allen, Judge The Honorable Lucas M. Rudisill, Magistrate |
| B.D., | |
| *Appellee-Petitioner.* | Trial Court Cause No. 28C01-1907-AD-5 |

**Kirsch, Judge.**

[1]     L.C. ("Father") appeals the trial court's decree of adoption, which granted the petition to adopt minor child, G.B.A. ("the Child") that was filed by B.D. ("Stepfather"). Father raises two issues, which we consolidate and restate as:

Whether the trial court erred in finding that Father's consent to Stepfather's petition to adopt the Child was unnecessary because Father failed to appear at the contested hearing for which he had received notice and because Father had failed to communicate with or had otherwise abandoned the Child.

We affirm.

## Facts and Procedural History

Father and T.D. ("Mother") are the biological parents of the Child, who was born on December 17, 2010. *Appellant's App. Vol. 2* at 9; *Tr. Vol. 2* at 9. In 2012, just before the Child turned two years old, Mother and Stepfather began dating and moved in together soon after the Child's second birthday. *Tr. Vol. 2* at 11. The Child began referring to Stepfather as "Dad" when she was three years old *Id*. at 11, 28. Mother and Stepfather married in 2014. *Id*. at 11.

On July 11, 2019, Stepfather filed a petition to adopt the Child, who was eight years old at the time. *Appellant's App. Vol. 2* at 6-7. In the petition, Stepfather stated that he did not know if Father would consent to the adoption but contended that Father's consent was unnecessary because:

> [P]ursuant to Ind. Code [section] 31-19-9-8, consent is not required from [Father]. [Father] has failed, without justifiable cause, to communicate significantly with [the Child] for a year or more and has knowingly failed to provide for the care and support of [the Child] when able to do so. Furthermore, [Father] Father has abandoned [the Child].

*Id*. at 7.

[5]     On August 2, 2019, Father wrote a letter to the trial court, stating that he would not consent to the adoption:

> I'm wrighting [sic] you because i was served papers from my daughters [sic] mother where they are wanting to adopt [the Child]. I will be comeing [sic] to court & will not sign my right's [sic] over. I was tould [sic] I needed to wright [sic] a letter explaining or just letting you no [sic] what I was going to do in this matter . . . .

*Id*. at 8. The trial court set the matter for a contested hearing for October 2, 2019. *Id*. at 4. Father did not appear at the October 2 hearing, but the trial court noted that the CCS did not indicate that Father had received notice of the hearing, so the trial court rescheduled the contested hearing to November 4, 2019. *Tr. Vol. 2* at 4-6; *Appellant's App. Vol. 2* at 4. Father was provided notice of the November 4 hearing. *Appellant's App. Vol. 2* at 4.

[6]     Father did not appear at the November 4 hearing. *Id*.; *Tr. Vol. 2* at 6. Stepfather's counsel, pursuant to Indiana Code section 31-19-9-18(c), moved to dismiss with prejudice Father's objection to the adoption because Father's consent was irrevocably implied as he had failed to appear at the hearing to contest the adoption and prosecute the motion without unreasonable delay. *Tr. Vol. 2* at 7.

[7]     The hearing then proceeded to the evidentiary phase. Mother testified that Father had not paid child support since June 2017. *Id.* at 9-10; *Pet'r's Ex. 1.* She also testified that Father had not visited the Child since December 2016 and had made almost no effort to contact Mother about arranging a visit for him

with the Child. *Tr. Vol. 2* at 9. Mother said Father made no attempt to visit the Child because he was frequently incarcerated for drug related crimes, theft and failure to pay child support. *Id*. at 12. Mother also testified that even when Father was not incarcerated, he made no attempt to visit the Child because of his chronic drug use, which most often involved intravenous use of heroin. *Id*. The trial court asked Mother if she had rejected any of Father's attempts to visit Child. *Id*. Mother answered: "Not really, pretty much any time that he has tried to come back in her life I have offered to slowly let him work his way back into her life, but he always ends up kind of falling off the wagon and losing touch." *Id*. Mother also testified that she wanted the trial court to find that Father's consent to the adoption was not necessary because of his failure to pay child support. *Id*. at 10. Mother said she consented to Stepfather's adoption of the Child. *Id*. at 12.

[8] Stepfather testified that he wanted to adopt the Child because he has acted as her father since she was two years old, having taken "care of everything for her." *Id*. at 13. He also testified that the Child has always considered him to be her father. *Id*. He stated that the Child needs stability in her life, which he said he could provide, and that allowing Father to step in and out of her life would "break[ ] her heart." *Id*. Stepfather stated that he has worked at Sunrise Coal for two years and makes a good income. *Id*. at 14. Stepfather said that he believed it was in Child's best interest for him to adopt her. *Id*. at 15.

[9] At the end of the November 4 hearing, the trial court ruled that under Indiana Code section 31-19-9-8(a)(1), (2), and (11), Father's consent was not necessary

because 1) Father had abandoned the Child for at least six months immediately preceding the date the petition for adoption was filed; 2) the Child was in the custody of Stepfather for at least one year, and during that time, Father failed to communicate significantly with the Child or knowingly failed to provide for the care and support of the Child as required by law or judicial decree; and 3) Stepfather proved by clear and convincing evidence that Father was unfit to be a parent, and the Child's best interests would be served by dispensing with Father's consent. *Tr. Vol. 2* at 16. Finally, because Father did not appear at the hearing and had failed to prosecute his objection to the adoption without unreasonable delay, pursuant to Indiana Code section 31-19-9-18(c), the trial court dismissed Father's objection to the adoption with prejudice. *Id*.

[10] At end of the November 4 hearing, the trial court set a "ceremonial hearing" to "finalize things" for December 5, 2019. *Id*. at 16-17. Also on November 4, the trial court issued its decree of adoption, which found that Father's consent was not necessary for the same reasons that the trial court had recited when it announced its ruling from the bench. *Appellant's App. Vol. 2* at 11. In addition, the trial court found, pursuant to Indiana Code section 31-19-9-18(b)(2), that Father's consent was irrevocably implied because while he did file an objection to the adoption, he failed to 1) appear at the November 4, 2019 hearing to contest the adoption and 2) prosecute his motion to contest the adoption without unreasonable delay. *Id*. Thus, the trial court granted Stepfather's petition for adoption. *Id*.

On December 5, 2019, the trial court held the hearing to finalize the adoption. As the hearing commenced, the trial court observed that Father was present and swore him in. *Tr. Vol. 2* at 18. The trial court first advised Father about what had occurred at the November 4 hearing. *Id*. at 19. The trial court then asked Father why he had failed to appear for the hearing; Father acknowledged that he had received notice for the hearing but explained, "I actually had a case going on in Monroe [County] and got my court dates mixed up." *Id*. at 19, 25. Father said he was also confused about the dates because his attorney had died. *Id*. at 20. However, the trial court reminded Father that his attorney had represented Father in a child support case, not the instant adoption case. *Id*. at 20-21. Father told the trial court that he still objected to the adoption and asked the trial court to appoint an attorney for him. *Id*. at 19, 21. Upon the trial court's request, Father left the courtroom. *Id*. at 26. Father and Mother offered brief testimony, as did the Child, who stated that she felt "good" about the adoption and wanted the trial court to approve the adoption. *Id*. at 30. The trial court then reiterated its November 4 findings and conclusions by finding that it was in the Child's best interest to be adopted by Stepfather and, therefore, approved the adoption. *Id*. Father now appeals.

## Discussion and Decision

"[A] parent's interest in the care, custody, and control of his child is "perhaps the oldest of the fundamental liberty interests." *In re Adoption of C.A.H.*, 136 N.E.3d 1126, 1129 (Ind. 2020) (quoting *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011)). However, a parent's non-participation in adoption proceedings "may

still result in the involuntary termination of parental rights." *C.A.H.*, 136 at 1129.

[13] We will not disturb an adoption ruling unless the evidence leads to but one conclusion, and the trial judge reached an opposite conclusion. *Id*. at 1128. We presume the trial court's decision is correct. *In re Adoption of T.L.,* 4 N.E.3d 658, 662 (Ind. 2014). To determine whether sufficient evidence exists to sustain the decision, we will not reweigh the evidence but will examine the evidence most favorable to the trial court's decision and the reasonable inferences drawn therefrom. *In re Adoption of K.S.,* 980 N.E.2d 385, 387 (Ind. Ct. App. 2012).

[14] When the trial court has made findings of fact and conclusions based on those findings, we normally apply a two-tiered standard of review: first, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *In re Adoption of M.H.*, 15 N.E.3d 612, 625 (Ind. Ct. App. 2014), *trans. denied*; *see also* Ind. Trial Rule 52(A). Factual findings are clearly erroneous if the record lacks any evidence or reasonable inferences to support them, and a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *M.H.*, 15 N.E.3d at 625.

[15] When an appellee fails to submit a brief, as here, our standard of review is relaxed because we will not assume the responsibility of developing arguments for the appellee. *McElvain v. Hite*, 800 N.E.2d 947, 948-49 (Ind. Ct. App. 2003). Instead, we review the trial court's decision for prima facie error, which means

error at first glance or on the face of it. *Id.* Consequently, we review for prima facie error the trial court's determination that Father's consent to the adoption was not required. *See id*.

[16] As relevant to this appeal, a parent's consent to adoption is not required under the following circumstances:

> (a) Consent to adoption . . . is not required from any of the following:
>
> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> . . . .
>
> 11) A parent if:
>
> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

> (B) the best interests of the child sought to be adopted would be
> served if the court dispensed with the parent's consent.

Ind. Code § 31-19-9-8.

[17] Father first argues that the fact that he missed one hearing – the November 4 final hearing – was not sufficient grounds for the trial court to find that his consent to the adoption was irrevocably implied. Father relies on *C.A.H.*, 136 N.E.3d at 1129, where the biological father missed the final hearing. The Supreme Court held: "Father's failure to attend the final hearing . . . is insufficient to overcome the important liberty interests at stake by finding him in default. Father's failure to appear at a single hearing also is insufficient to support a finding of implied consent . . . ." *Id*. Here, we agree with Father; even though Father received notice of the November 4 hearing, the trial court erred when it concluded that Father's consent to the adoption was irrevocably implied because Father had failed to appear at the November 4 hearing.

[18] However, the trial court found that Father's consent was unnecessary for other reasons: 1) Father had abandoned the Child for at least six months immediately preceding the date the petition for adoption was filed; 2) the Child was in the custody of Stepfather for at least one year, and during that time, Father failed to communicate significantly with the Child or knowingly failed to provide for the care and support of the Child as required by law or judicial decree; and 3) Stepfather proved by clear and convincing evidence that Father was unfit to be a parent, and the Child's best interests would be served by dispensing with Father's consent. *Tr. Vol. 2* at 16. Father challenges only two

of these three conclusions[1] - the determinations that 1) Father had abandoned the Child for at least six months immediately preceding the date the petition for adoption was filed; and 2) the Child was in the custody of Stepfather for at least one year, and, during that time, Father failed to communicate significantly with the Child.[2] He claims that Stepfather failed to prove these factors by clear and convincing evidence, and, therefore, the trial court erred in making these determinations.

[19] Father's argument on these issues is both underdeveloped and unclear. He appears to argue that the reason he abandoned the Child and failed to communicate with her is because Mother thwarted his efforts to communicate with the Child. Father does not identify what those efforts were. In so arguing, Father appears to be relying on Mother's testimony at the November 4 hearing where, in response to the trial court's question about whether she rejected any of Father's attempts to visit the Child, she stated: "Not really, pretty much any time that he has tried to come back in her life I have offered to slowly let him work his way back into her life, but he always ends up kind of falling off the wagon and losing touch." *Tr. Vol. 2* at 12. Father seems to argue that this statement shows that Mother was thwarting his efforts to communicate with

---

[1] Father does not even allege that trial court erred in finding that Father was unfit to be a parent, and the Child's best interests would be served by dispensing with Father's consent. Thus, Father has failed to demonstrate prima facie error.

[2] In challenging this determination, Father challenges only part of the trial court's conclusion. Father does not demonstrate, or even allege, that the trial court erred in finding that Father had failed to provide for the care and support of the Child as required by law or judicial decree. *See Tr. Vol. 2* at 16. Once again, Father has failed to demonstrate prima facie error.

Child. In support, he relies on *E.W. v. J.W.*, 20 N.E.3d 889, 897 (Ind. Ct. App. 2014), *trans. denied*, where we held that the father's efforts to thwart the mother's efforts to communicate with the child weighed in the mother's favor in determining whether she failed to make efforts to communicate with the child. Father also relies on *E.B.F. v. D.F.*, 93 N.E.3d 759, 763 (Ind. 2018), where the Indiana Supreme Court ruled that the father and stepmother's efforts to stymie the mother's attempts to communicate with the child meant that the mother's consent to the adoption was necessary and thus reversed the trial court's granting of the petition for adoption.

[20] These cases are readily distinguishable. In *E.W.*, 20 N.E.3d at 896-97, the father prohibited communication between the mother and child for over a year until the date of the contested hearing. In *E.B.F.*, 93 N.E.3d at 766, the father and stepmother refused to return the mother's repeated phone calls to arrange visitation with the child. Also, the stepmother admitted that the father refused to let the mother see the child and also conceded that if the child did not want to see the mother, the stepmother would not let the child visit the mother. *Id.* at 767. In addition, in a case that Father does not cite, this court held that the trial court erred in concluding that the out-of-state father's consent was not required where the father had sent letters to the child and attempted to arrange visits with child, but the mother returned the letters unread and blocked the father's efforts to visit. *In re Adoption of A.K.S.*, 713 N.E.2d 896, 899 (Ind. Ct. App. 1999), *trans. denied*.

[21] Here, Mother and Stepfather engaged in no such efforts to thwart Father's purported efforts to communicate with the Child. Mother's testimony that when Father tried to come back into the Child's life, she "offered to slowly let him work his way back into her life" did not establish that Mother was thwarting Father's efforts to communicate with the Child. Taken in the light most favorable to the trial court's decision, Mother was simply proceeding cautiously regarding Father's requests to visit and communicate with the Child, not blocking his efforts to communicate with the Child.

[22] The evidence clearly established that Father had, in fact, abandoned the Child and failed to communicate with the Child. Mother testified at the November 4, 2019 hearing that Father had not visited the Child since December of 2016 and had made almost no effort to contact Mother about arranging a visit for him with the Child. *Tr. Vol. 2* at 9. *See In re Adoption of E.A.*, 43 N.E.3d 592, 597-98 (Ind. Ct. App. 2015) (evidence supported finding that biological father, for a period of at least one year, failed without justifiable cause to communicate significantly with child although he was able to do so, and thus biological father's consent to mother's husband's petition to adopt child was not required), *trans. denied*. Accordingly, we conclude that Father has failed to establish a prima facie case that the trial court erred in concluding that his consent to the adoption was unnecessary.

[23] Affirmed.

Pyle, J., and Tavitas, J., concur.